OF THE

## STATE OF MISSOURI

AT THE

## APRIL TERM, 1916.

(Continued from Vol. 268)

## LULU YOUNG v. PENNSYLVANIA FIRE INSUR-ANCE COMPANY, Appellant.

Division One, July 3, 1916.*

1. **PREMATURE SUIT: Must Be Pleaded.** The question of a premature suit is in the nature of a plea in abatement, and to be available should be specifically pleaded.

2. ————: **Insurance: Waiver of Proof of Loss.** An insurance company waives proof of loss when it enters into an arbitration of the amount of damages under the policy. It also waives proof of loss when its adjuster confers with the insured about the loss, concedes liability and enters into an agreement to arbitrate the amount of the damage, without demanding proof of loss or offering blank proofs to the plaintiff. And if the policy stipulates that suit cannot be brought within sixty days after proof of loss, a suit brought more than sixty days after such waiver is not premature, for the waiver takes the place of actual proof. Nor is the waiver affected by the fact that after the appraisers made their award, the insured, as a matter of precaution, made proof of loss and brought suit within sixty days thereafter.

3. **INSURANCE: Appraisement: Void Under Statute.** When section 868, Revised Statutes 1909, is read in the connection intended by the Legislature, its purpose will be seen to be to render void provisions in insurance contracts which attempt to enforce settlements by means of appraisers. Its purpose was to nullify appraisement clauses in contracts.

*NOTE.—Opinion filed March 30, 1916. Motion for rehearing and to transfer to Court in Banc overruled July 3, 1916. Certified to Reporter January 18, 1917.

4. ———: ———: ———: **Retroactive Operation.** But said statute applied only to contracts "hereafter entered into," and since it was enacted in 1909 is could not affect a contract made in 1907.

5. ———: ———: **Bar to Suit: Measure of Damages: Fraud.** A written agreement appointing appraisers, entered into after the fire, by which the parties to an insurance policy agree to accept their appraisement, does not bar a suit by the insured upon the policy, because the cause of action is not merged into an award, as in arbitration; but such appraisement is binding as to the amount of loss, if it was not fraudulently procured.

6. ———: ———: **Release: Procured by Fraud: Pleading: Trial by Jury: Section 1812.** If the appraisement, under an agreement entered into, after the fire, by the parties to the policy, is procured by fraud of any kind upon the part of one of the parties, and such party sets up the appraisement in bar of a full and complete recovery, the other party can, under section 1812, Revised Statutes 1909, plead the fraud, and have such fraud determined by a jury. That statute is broad enough to embrace a partial release, as well as a full release. [Disapproving Shoe Co. v. Insurance Co., 178 S. W. l. c. 248.]

7. ———: ———: ———: ———: **Considered as Equitable Defense: Estoppel.** Even if the reply to the insurance company's answer setting up an appraisement in bar of the action on the policy for damages, by which it is charged that the appraisement was procured by fraud, be considered to be equitable in its nature, defendant is estopped to complain that the court erred in overruling its demurrer to the reply, if, after such ruling, it proceeded, without objection, to try the case, before a jury, as one at law. ·

8. ———: ———: **Evidence of Fraud: Appraiser and Umpire.** Conceding that appraisements of the loss by fire will not be set aside except upon clear and convincing evidence of fraud, shocking misconduct by the company's appraiser and the umpire will sustain the charge of fraud.

9. ———: **View of Property by Jury: Discretion of Court.** Whether or not the trial jury shall be permitted to view the property after the fire is a matter largely discretionary with the trial court, and if the facts show no abuse of such discretion a refusal will not on appeal be held to be error. Nor will the fact that the trial judge placed its refusal upon the ground that he was not empowered to make such an order affect the ruling, if the facts show there was no abuse of his discretion.

10. ———: **Vexatious Delay: Evidence: Threats.** Evidence that defendant's own adjuster estimated the damages to be greater by more than fifty per cent than the amount agreed to by the appraisers, and that defendant threatened to keep the case in court for five years if the insured did not accept the known fraudulent appraisement, is sufficient to submit to the jury the question of vexatious refusal to pay. ´ ·

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

AFFIRMED.

*Ryan & Thompson* for appellant.

(1) This suit was premature. The action under the policy could not be brought until more than sixty days after the proofs of loss. The question of waiver by defendant does not arise. The defendant was willing to pay the award and no more, but that gave the plaintiff no right to bring suit before the expiration of the sixty days as for a total loss. Further the finding of the jury was that there was not a total loss. We find no insurance case in Missouri just in point but the general rule that a cause of action cannot be maintained because the obligation has not accrued is laid down in these cases: Heard v. Ritchey, 112 Mo. 516; Turk v. Stahl, 53 Mo. 437; Mason v. Bernard, 37 Mo. 385-391; Bush Cons. Co. v. Withnell, 190 Mo. App. 44; Lawler v. Vette, 166 Mo. App. 352; Brown v. Shuck, 27 Mo. App. 351; Vandike v. Maddix, 23 Mo. App. 192; Duryee v. Turner, 20 Mo. App. 34; Grier v. Fox, 4 Mo. App. 522. Said cases approve the method followed in this case of raising the question, to-wit under a general denial by demurrer to the evidence. (2) The court erred in overruling the defendant's demurrer to the reply. The award was not void but at most voidable, and plaintiff's relief, if any, against the appraisement could only have been awarded in a court of equity. Sec. 1812, R. S. 1909, does not apply. Shoe Co. v. Phœnix Co., 178 S. W. 246; Althoff v. Transit Co., 212 Mo. 166; Courtney v. Blackwell, 150 Mo. 245; Hancock v. Blackwell, 139 Mo. 445; Ochs v. Railroad, 130 Mo. 77; Blair v. Railroad, 89 Mo. 383; Finley v. Finley, 11 Mo. 624; Kaplan v. Niagara Co., 65 Atl. (N. J.) 188; Ins. Co. v. Ries, 80 Ohio St. 282; Fire Assn. v. Allesina, 45 Ore. 158; Michels v. Western U. Assn., 129 Mich 424; N. B. & M. Ins. Co. v. Lathrop, 70 Fed. 429; Sec. 1812, R. S. 1909. (3) The courts look with approval on submitting

the amount of loss to appraisal, and if the appraisers act fairly, and reasonably, in examining into the loss and making their award, and are animated in good faith by a desire to reach a fair award their conduct and conclusion will be upheld. It is presumed they have done their duty and their award will not be set aside save on clear and convincing evidence of fraud, misconduct or mistake. Kent Co. v. Ins. Co., 165 Mo. App. 45; Stevens v. Ins. Co., 120 Mo. App. 104; Sebree v. Board of Education, 254 Ill. 438; Liverpool Co. v. Goehring, 99 Pa. St. 13; Steel Co. v. Ins. Co., 87 Fed. 733; Vincent v. Ins. Co., 120 Iowa, 272; Hall v. Ins. Co., 57 Conn. 105. (4) The conduct of the appraisers and umpire here in taking the estimates of mill men, painters, etc., into consideration in making up their award was proper. The appraisers are the exclusive judges of what evidence they needed in reaching a conclusion, the agreement of submission not providing for any hearing. Liverpool Co. v. Goehring, 99 Pa. St. 13; Steel Co. v. Ins. Co., 87 Fed. 733; Sebree v. Board of Education, 254 Ill. 438. The evidence here shows that Young, himself, got an estimate for his appraiser, Hurster, which the latter presented to his colleagues. (5) The court erred in submitting to the jury the question of the validity of the award. Even if the award could be attacked by the reply, the evidence failed to support the charges and justify setting aside the award. Authorities under points three and four. (6) The court erred in holding that it had no jurisdiction to send the jury to St. Louis, to inspect the premises. (a) In not exercising its discretion and determining upon defendant's application, whether or not the jury should be sent to St. Louis to inspect the premises The court had that discretion. Ellis v. Railroad, 131 Mo. App. 400; Springer v. Chicago, 135 Ill. 552; 45 Central Law Journal, 51; 26 Central Law Journal, 436. (b) The court should have, under the evidence, and the circumstances as developed, exercised discretion and sent the jury to St. Louis to inspect the premises. (7) The court should not have admitted evidence as to attorneys' fees and should have instructed the jury there

could be no recovery of damages or attorneys' fees un-
der Sec. 7068, R. S. 1909. There was no evidence to
warrant finding a vexatious refusal to pay the loss; and
besides the jury did not award plaintiff all she had de-
manded. Fager v. Union Ins. Co., 189 Mo. App. 464-9;
Weston v. Ins. Co., 191 Mo. App. 282; Rogers v. In-
demnity Co., 189 Mo. App. 82; Kahn v. London Corp.,
187 Mo. App. 216; Patterson v. Ins. Co., 174 Mo. App.
37-44; Blackwell v. Ins. Co., 80 Mo. App. 75.

*Reynolds & Harlan* and *Leahy, Saunders & Barth,*
*Amici Curiae.*

*Frank H. Haskins* and *Fauntleroy, Cullen & Hay* for
respondent.

(1) The defense that an action on an insurance policy
is prematurely brought is an affirmative defense of which
defendant cannot avail itself under a general denial.
Giboney v. Ins. Co., 48 Mo. App. 185; Burgess v. Ins.
Co., 114 Mo. App. 188; Meyer Bros. v. Ins. Co., 73 Mo.
App. 166; Miles v. Casualty Co., 115 N. Y. Supp. 1   (a)
The provision that loss shall be payable sixty days after
proof of loss is waived by such action of the company
as waives proof of loss. Jensen v. Ins. Co., 116 N. W.
286; Preferred Accident Co. v. Fulding, 83 Pac. (Colo.)
1013.   (b) The insurance company's failure to furnish
blank forms of proofs of loss waived its right to defend
for want of proofs of loss. The answer does not aver
that such blank forms were furnished, and hence no
issue as to proofs of loss is in the case. R. S. 1909, secs.
7028, 7029; Bank v. Assurance Co., 106 Mo. App. 114;
Meyer Bros. v. Ins. Co., 73 Mo. App. 166.   (c) The de-
fendant waived its right to demand proofs of loss by
demanding and securing an appraisal. Branigan v. Ins.
Co., 102 Mo. App. 70; Bank v. Ins. Co., 109 Mo. App.
654; Murphy v. Ins. Co., 70 Mo. App. 78; Ross v. Ins.
Co., 114 Pac. (Kan.) 1054; George Dee & Sons Co. v.
Ins. Co., 73 N. W. 594.   (d) When once waived, the re-
quirement that proof of loss should be furnished is elim-
inated from the policy and the voluntary furnishing of

proofs by the plaintiff is a superfluous act and does not enlarge the time when the policy falls due. Carp v. Ins. Co., 116 Mo. App. 543; Burgess v. Ins. Co., 114 Mo. App. 168; Roberts v. Ins. Co., 94 Mo. App. 149; Porter v. Ins. Co., 62 Mo. App. 520. (e) The answer of the defendant admits liability for the amount of the award, and this admission is in substance and effect a tender, and the plaintiff is estopped from contending that the suit is premature. Giboney v. German Ins. Co., 48 Mo. App. 185; Eagan v. Martin, 81 Mo. App. 679; Bambrick v. McCormick, 157 Mo. App. 199. (2) The award may be attacked at law. An "arbitration" or "appraisal" under an insurance policy does not fall within the purview of statutes or common law prescribing the formal requisites of an "arbitration and award," and hence may be set aside without resort to equity. Zallee v. Ins. Co., 44 Mo. 530; Paint Co. v. Ins. Co., 165 Mo. App. 30; Shoe Co. v. Assur. Co., 178 S. W. (Mo. App.) 246; Garred v. Doniphan, 10 Mo. 161; Tiffany v. Coffee, 142 Mo. App. 210; Ins. Co. v. Darragh, 128 Fed. 890; Sears v. Ins. Co., 149 Mass. 345. This question was attempted to be raised only by a demurrer filed a moment before the case was called and after the case had, on application of defendant, been continued several times, and was properly overruled as being filed too late. Stonemets v. Head, 248 Mo. 243. (3) The statute applies to such settlement. The term "settlement" as used in the statute does not necessarily mean payment or satisfaction, though it may mean that. It frequently means adjustment, arrangement. A "settlement" is a contract between two parties by means of which they ascertain the state of the accounts between them and strike a balance. Toombs v. Stockwell, 131 Mich. 633; Beall v. Water Co., 185 Fed. 179; Jackson v. Ely, 57 Ohio St. 450. (4) the award was invalid. While appraisers may not always be required to take evidence as to the damage to property visible and open to their inspection, but as to property wholly destroyed or not so visible and open to inspection, appraisers necessarily act upon information or evidence, and both the insured and the company should

receive notice of time and place of hearing, and a refusal in such case to hear evidence vitiates the award. Jones v. Ins. Co., 171 S. W. 28; Stout v. Assurance Co., 56 Atl. 691; Ins. Co. v. Hegewald, 66 N. E. 902; Kaiser v. Ins. Co., 69 N. Y. Supp. 344; Kernon v. Ins. Co., 44 N. E. 698; Ins. Co. v. Jester, 132 Pac. 130; Ins. Co. v. Hamilton, 48 Ill. App. 593; Embry's Exr. v. Embry's Devisees, 102 S. W. 239; Ins. Co. v. Garrett, 125 Fed. 589; Ins. Co. v. Payne, 46 Pac. 315; Ins. Co. v. Moore, 46 Pac. 1131; Mason v. Fire Assn., 122 N. W. 423; Christianson v. Ins. Co., 88 N. W. 16; Carlston v. Ins. Co., 94 Pac. 756; Ins. Co. v. Romeis, 15 Ohio C. C. 697; Stemmer v. Ins. Co., 33 Ore. 65, 27 Ins. L. J. 972; Bank v. Ins. Co., 85 Me. 68; Redner v. Ins. Co., 92 Minn. 306. (5) The award is void because the appraisers were partial and not disinterested; the company's adjuster secured the appointment of its appraiser by fraudulent misrepresentations and suppression, because the umpire exceeded his jurisdiction and the appraisers adopted a wrong rule of law, and the award was so inadequate as to shock the conscience of fair-minded men. Kiernan v. Ins. Co., 44 N. E. 698; Pierce v. Sun Ins. Office, 147 N. Y. Supp. 947; Bradshaw v. Ins. Co., 137 N. Y. 137; Bradshaw v. Ins. Co., 32 N. E. 1055; Hall v. Assurance Co., 133 Ala. 637; Hickerson v. Ins. Co., 33 S. W. (Tenn.) 1041, 32 L. R. A. 172; Brock v. Ins. Co., 61 N. W. (Mich.) 67, 26 L. R. A. 623, 47 Am. St. 562; Bernhard v. Ins. Co., 79 Conn. 388; Jerrells v. Ins. Co., 82 Kan. 320; Savings Assn. v. Ins. Co., 87 N. Y. Supp. 1075; Van Gindertalen v. Ins. Co., 82 Wis. 112; Traub v. Ins. Co., 83 Md. 524; Mullen v. Ins. Co., 67 N. W. 445; Siebert v. Ins. Co., 106 N. W. 509; Bell v. Ins. Co., 75 S. W. 321; Schiff v. Ins. Co., 64 Atl. 63, 35 Ins. L. J. 820; Ins. Co. v. Traub, 83 Md. 524; Kirkham v. Ins. Co., 141 Pac. 1012; Baldinger v. Ins. Co., 141 N. W. 104; Perry v. Ins. Co., 137 N. C. 402; Baker v. Co., 57 Mo. App. 564; Bartless v. Exchange, 116 Wis. 450; Hilton v. Assurance Co., 42 Atl. 412; Ins. Co. v. Everett, 46 S. W. (Tex.) 95; Hoffman v. Ins. Co., 1 La. Ann. 216; Ins. Co. v. Taylor, 14 Colo. 499; Ins. Co. v. Johnson, 11 Bush. 587;

Bradley v. Ins. Co., 11 Mich. 445. (6) A motion for a view is addressed to the discretion of the trial court, its ruling thereon will not be reversed on appeal in the absence of a showing of an abuse of discretion. Rickman v. Ins. Co., 120 Wis. 655; State v. Hancock, 148 Mo. 488; Ellis v. Railroad, 131 Mo. App. 400; Springfield v. McCarthy, 79 Ill. App. 388; Shelby County v. Castetter, 7 Ind. App. 309; Jackson County v. Nichols, 139 Ind. 611; Banning v. Railroad, 89 Iowa, 74; Clayton v. Railroad, 67 Iowa, 238; Railroad v. Hoskins, 15 Ky. L. R. 238. (7) The evidence tended to show want of good faith in the defense, tended to prove that the company had connived at fraud and adopted a fraudulent appraisal and tried to force a settlement at a sum less than the amount it conceded to be due, and to force a low settlement, threatened to keep claim in litigation for five years, and hence the refusal to pay was vexatious within the meaning of the law. Gillispie v. Ins. Co., 168 Mo. App. 323; Stix v. Ins. Co., 175 Mo. App. 171; Williams v. Ins. Co., 189 Mo. 71; Keller v. Ins. Co., 198 Mo. 460; Cox v Ins. Co., 154 Mo. App. 464; Leahman v. Ins. Co., 183 Mo. App. 696.

GRAVES, P. J.—This is an action upon an insurance policy commenced in Audrain County. The plaintiff lives in St. Louis, and the property insured was in St. Louis. Upon a trial before a jury plaintiff had a verdict for $7953.69 as her damages, $1000 attorneys' fees and $100 penalty, or a total of $9053.69. From the judgment upon such verdict the defendant has appealed.

Distinguished counsel for appellant have made a painstaking analysis of the pleadings in this case, and we adopt their statement of the pleadings. They say:

''The action is in the ordinary form upon a policy of insurance, claiming the full value of the insurance, as of a total loss in the sum of at least $18,000, because of a fire that occurred May 25, 1911, at 4961 Park View Place, St. Louis. This suit is for $8000 and attorneys' fees and damages. The cause was brought to the November term, 1911, of the Audrain County Circuit Court.

The answer denied the premises were totally destroyed, denied the loss was $18,000, and that there was a vexatious refusal to pay, and alleges the property was damaged not to exceed $5921.86. The answer further pleaded concurrent insurance for $8000 more (suits on the other three policies are pending at Mexico), and that defendant is only liable for one-half of $5921.86. The answer also alleged conditions in the policy respecting an appraisement in the event of disagreement as to the amount of the loss; that there was such an appraisement, and that the two appraisers appointed by the plaintiff and the defendant, to-wit, John A. Hurster and Chas. B. McCormack, together with the umpire, F. J. Remmers, selected by the appraisers, made an award of sound value $18,000 and loss and damage $5921.86, and defendant was only liable for one-half thereof, to-wit: $2960.93.

"The reply denied the validity of the concurrent insurance clause, admitted there was such insurance, but denied it was concurrent. Denied the loss was only $5921.86 and alleged it was total. The reply then proceeds to admit the disagreement, and the appointment of the appraisers and selection of the umpire, and attacks the award, alleging: (a) that they did not appraise the loss, though they signed the award; (b) that they did not impartially or fairly perform their duties, that they were not competent or disinterested; (c) that plaintiff was induced to enter into appraisement by false and fraudulent representations by defendant that McCormack was fair, competent and disinterested and would replace the buildings as before the fire for the amount of the award; (d) that McCormack suggested Remmers as umpire, and falsely and fraudulently represented to Hurster that Remmers was competent and disinterested, and would act in a fair and proper way, and that Hurster, relying thereon, agreed to Remmers as umpire, whereas both McCormack and Remmers were not competent or disinterested, but were, and for years had been, professional and frequent appraisers in fire losses for the insurance companies in St. Louis, and were biased, prejudiced and incompetent to act, all of that being

known to defendant and the other companies; (e) that the appraisers and umpire would not, though often requested by plaintiff and his counsel, allow them to appear and be heard in connection with their determination of the matters, or the sound value of the buildings, or the loss by fire, and denied them the right to produce any witness or evidence in regard to said matters, or any matter involved in the appraisal; (f) that McCormack and Remmers privately got from outside parties evidence as to the value of parts of the insured property, without the knowledge of plaintiff, or letting her know thereof, or letting her offer testimony on the subject of the value, and sent parties to visit the building without parties knowing what the building had been before the fire or what had been destroyed, it being impossible for them to learn facts, and then got bids from the parties as to what they would replace parts of the building for as before the fire, when said parties did not and could not know what had been the condition before the fire or what would be the cost of replacing such parts as they were to bid on; (g) alleges such parties were incompetent and incapable of doing the work, or making accurate reports, or making bids, or learning the facts, and that they guessed at, and incorrectly reported to the appraisers and umpire, their bids, and that they were wholly inadequate, and below the fair cost to replace such parts as they bid upon as they were before the fire, and that Hurster demanded of the other two that plaintiff be allowed to appear before the three of them, and be heard upon the matters, but McCormack and Remmers refused to let plaintiff, or her counsel, be heard before the appraisers or the umpire; (h) that the estimates and bids of said parties included different, cheaper and inferior materials from what was in the building before the fire, and was not intended by the parties to replace the building in the condition as before the fire; (i) that neither the appraisers nor the umpire knew what information said bidders had obtained or what they had figured upon in their bids, or what facts or information they used in making their bids, but nevertheless the appraisers and

umpire used such false, incorrect, and inadequate bids in arriving at the award; (j) that the appraisers and umpire in arriving at the sound value, and the award, did not truly or correctly estimate or endeavor to estimate same, but carelessly, wrongfully, inaccurately and fraudulently guessed at same, and (k) neither McCormack nor Remmers ever meant to make a correct award, but intended to and knowingly placed the amount of loss at a sum which was in fact, and as they well knew, far below the true loss suffered by plaintiff, and that $5921.86 does not represent, as they well knew, the amount of loss; (l) that, before the award was signed and returned by the three men, Hurster objected and protested against it and informed the other two the loss was in excess of $5921.86 and at least $18,000, but they stated and promised Hurster they would replace the building in exactly the condition before the fire for $5921.86 if he would sign the award, and Hurster relying thereon, and supposing they would fulfill their promise as to so replacing, and supposing he was bound to join in the award, as they had the majority vote, signed his name to the award.

"The reply then alleges (m) that the damage was wide-spread and complete, and such as to make it impossible for the appraisers, or umpire, or anyone, to know what was the loss, without evidence of persons who knew the building as it was before the fire, so as to be informed as to same, and that the appraisers and umpire wrongfully and unlawfully refused to let plaintiff appear or produce any evidence on the subject, and any conclusion they arrived at was guess work, inaccurate, and far below the actual value before the fire; (n) that neither McCormack nor Remmers ever replaced, or offered to replace, the buildings in the condition they were in before the fire for the sum named in the award, and had refused, though so requested by plaintiff.

"This is a fair summary of all the allegations in the reply in a serial order, as we have endeavored to indicate the various specific charges by lettering them in this way, although they run along continuously in the reply."

Whilst numerous assignments of error are made, only eight of them are briefed and argued here. Others seem to have been abandoned. The record is a very voluminous one (nearly 1000 closely printed pages), but the questions presented are largely questions of law. By that we mean that the facts are such as to make the verdict of the jury conclusive upon most, if not all, issues of fact. Points urged, with the pertinent facts, will be noted in order, in the course of the opinion.

I. The first point made is that the suit was prematurely brought. This is based upon the theory that the suit was brought before the expiration of sixty days after the filing with the company of proofs of loss. The building was destroyed by fire May 25, 1911. The company and the plaintiff being unable to agree upon the damages suffered, submitted the matter to three appraisers, one selected by each party and the third selected by these two. This appraisement was completed July 25th, just sixty days after the fire. Suit was filed October 2, 1911. Seemingly, as a matter of precaution, the plaintiffs made and filed proofs of loss September 23, 1911, and sixty days not having elapsed between this date and the date of filing the suit, this question of a premature suit is raised. There is neither law nor logic in the position.

As said by ROMBAUER, P. J., in Giboney v. Insurance Co., 48 Mo. App. 185, the question of a premature suit is in the nature of a plea in abatement and not a plea in bar. Such matters should be specifically pleaded. The answer in this does not invoke this plea in abatement. A mere general denial is not sufficient. A plea in abatement is in the nature of an affirmative defense, and must be specially pleaded to be available. This would be sufficient to dispose of this matter, but there are several other questions just as fatal to this contention of the defendant. One of these questions is, that the defendant waived proofs of loss, when it entered into an arbitration of the amount of the damage under the policy. This was within sixty days after the fire, because the report of the appraisers or arbitrators was just sixty days after

the fire. As said by SMITH, P. J., in Murphy v. Insurance Co., 70 Mo. App. l. c. 87:

"After the arbitration provision is set in active operation there can arise no issue in respect to proofs of loss. In order to make out a prima-facie case the plaintiff was not required to produce proofs of loss timely and satisfactorily made, nor proof of waiver thereof, for the reason that the provision of the policy requiring the proofs of loss had, by the defendant's own act, been in effect stricken from the policy and was not subject to be invoked by it."

In Branigan v. Insurance Co., 102 Mo. App. l. c. 73, GOODE, J., said:

"Proofs of loss were waived by the company; for its adjuster conferred with the insured about the loss without demanding proofs, and conceded the company's liability; a written agreement to arbitrate the amount of the damage was executed and no blank proofs were furnished the plaintiff."

In the case at bar all the facts suggested by Judge GOODE appear. The adjuster admitted liability and suggested that the total loss was about $9500. Mr. Young, the husband of the plaintiff, and acting for her, claimed the damages were much in excess of such sum. The arbitration followed. No blank proofs of loss were furnished by the company as required by statute. There was a complete waiver of proofs of loss. By pleading an arbitration, as the defendant does in this case, a waiver of proofs of loss is admitted. In Bank v. Insurance Co., 109 Mo. App. l. c. 661, SMITH, P. J., said:

"Again it appears that the plaintiff had brought a prior action on the policy here sued on and in which it was obliged to suffer a nonsuit. It further appears that in the answer in that action the defendant pleaded the arbitration clause and of that requiring proofs of loss and a failure of compliance on the part of the plaintiff. This answer the plaintiff, against the objections of defendant, was permitted to read in evidence. We cannot doubt that under the authorities it was competent evidence. Its allegations of fact were declarations or ad-

missions which the plaintiff was entitled to give in evidence. [Bailey v. O'Bannon, 28 Mo. App. l. c. 46; Bowman v. Globe Heating Co., 80 Mo. App. l. c. 635; Spurlock v. Railroad, 125 Mo. l. c. 406, and cases there cited.] In it, as has been seen, were pleaded the arbitration clause of the policy and a failure to comply therewith. This amounted to an implied admission of waiver as to the proof of loss requirement. The arbitration clause could have been invoked only on the theory that there had been a fire and consequent loss for which there was liability, but a disagreement alone as to the amount of such loss. In such cases compliance with all the other conditions must be conceded before there can be an arbitration as to the amount to which the plaintiff was entitled under his policy. [Murphy v. Ins. Co., 70 Mo. App. l. c. 86.]"

There are several other matters just as fatal to this contention as these two, but these are sufficient.

Now taking a step further, this record shows this waiver of proofs of loss to have been more than sixty days prior to the filing of this suit. The waiver took the place of the actual proofs of loss. The suit could not be prematurely brought, if not brought until after sixty days from this waiver of proof of loss. There is nothing in this contention of the defendant, and it is ruled against it.

II. The second contention of the defendant is thus couched in the brief:

"The court erred in overruling the defendant's demurrer to the reply. The award was not void, but at most voidable, and plaintiff's relief, if any, against the appraisement could only have been awarded in a court of equity. Section 1812, Revised Statutes 1909, does not apply."

Appraisement: Fire Insurance: Release.

It is urged by the plaintiff that the clause in the contract providing for the ascertainment of the loss by appraisers is void, as being in conflict with the Act of 1909, Laws 1909, p. 347, now section 868, Revised Statutes 1909. In 1909 the Legislature added a new section to

·chapter 10, Revised Statutes 1899, to be known as section 899a. This new section reads:

"Any contract or agreement hereafter entered into containing any clause or provision providing for an adjustment by arbitration shall not preclude any party or beneficiary under such contract or agreement from instituting suit or other legal action on such contract at any time, and the compliance with such clause or provision shall not be a condition precedent to the right to bring or recover in such action."

Chapter 10, Revised Statutes 1899, is pertaining to "Contracts and Promises," and contained eleven sections. Prior to this amendment of 1909 the last section (Sec. 899) of the chapter, read:

"All parts of any contract or agreement hereafter made or entered into which either directly or indirectly limit or tend to limit the time in which any suit or action may be instituted, shall be null and void."

By the Act of 1909 this was followed by the new section to be known as section 899a, supra. We note this connection and the subject-matter of the chapter purposely. It helps to get the legislative intent. When we read the whole chapter, it will be noticed that it pertains solely to contracts and promises, and not especially to arbitrations. Why it was placed in Revised Statutes 1909 in chapter 7, under the head of "Arbitration," rather than in the more appropriate place of "Contracts and Promises" we do not know. When section 868, Revised Statutes 1909, is read in the connection the Legislature intended it to have, we believe its purpose was to render void provisions in contracts which enforce arbitration or settlements by means of appraisers under insurance policies. The policy in this case is such as forced an appraisement of loss if the parties could not agree. We believe that this statute struck at just such contracts. We cannot read the last section of old chapter 10, Revised Statutes 1899, and know that the Legislature had that section before it when it added the new section, without concluding that the purpose of the new section was to kill such clauses in a contract as we have here.

But all this availeth not the plaintiff in this case. This contract was entered into in 1907 and ran for a period of five years. The contract antedated the Act of 1909. This act only applied to contracts "hereafter entered into," and hence did not and could not affect this contract.

But defendant's trouble is not over by the foregoing holding. The purpose of this clause of the contract was a means of getting to a settlement of the difference of the parties as to the amount of the loss. The purpose of the clause in the policy is to fix the amount of his loss under the policy, as if the parties had agreed to the amount of such loss and the company had paid it. In other words, this clause of the policy was designed to procure an agreement and settlement as to the amount of the loss. In this case such settlement is set up as a bar to a full recovery on the policy. It is not a bar to the action, and is not so pleaded, but it is pleaded as a bar to a recovery in an amount greater than that fixed by the appraisers. This court has held that such assessment by appraisers of the amount of damages is not an award by arbitration, under our statutes or the common law as to arbitration: Zallee v. Ins. Co., 44 Mo. 530. But this same case further held:

"The written agreement, entered into after the fire, appointing the appraisers, and by which the parties agreed to accept their appraisement, was a practical carrying into effect of the stipulations of the policy. These stipulations having actually been complied with and an appraisal had in conformity thereto, *no good reason is perceived why the parties should not be bound by the result*. That result cannot, and ought not to, be avoided on the ground that the appraisers were not sworn. *They acted as appraisers, and not as arbitrators*. The reference to them was not a submission to arbitration in the legal sense, but a just and reasonable mode of fixing values—the value of the injured goods before and after the fire, the difference representing the amount of loss or damage."

The same case holds that the right to sue upon the policy is not barred by the appraisement, because it says the cause of action is not merged into an award, as in arbitrations. It does hold, however, that the appraisement is binding as to the amount. To this holding we should add "if such appraisement was not fraudulently procured."

It must be said that this appraisement is not a discharge of the cause of action, and it perhaps should be further said that it does not fall strictly within the letter of section 1812, Revised Statutes 1909. This section reads:

"Whenever a release, composition, settlement or other discharge of the cause of action sued on shall be set up or pleaded in the answer in bar to plaintiff's cause of action sued on, it shall be permissible in the reply to allege any facts showing or tending to show that said release, composition, settlement or other discharge was fraudulently or wrongfully procured from plaintiff, and the issue or issues thus raised shall be submitted with all the other issues in the case to the jury, and a general verdict or finding upon all the issues, including the issue or issues of fraud so raised shall be sufficient."

This section really contemplates things done by the parties themselves, and things which if done knowingly and without fraud would discharge the cause of action.

It is pretty generally held that these appraisements under clauses of an insurance policy, such as we have here, do not discharge the cause of action. But we do say that it is conclusive as to the amount of damages. To that extent it is a partial release or discharge of the cause of action. And whilst it is not the direct action of the parties, it is the action of the parties through their selected agents.

These two matters are so similar in force and effect, that in our judgment, if this appraisement, which is of itself a partial release and discharge of the cause of action, is procured by fraud of any kind upon the part of one of the parties, and such party set up the ap-

praisement, as here, in bar of a full and complete recovery, the other party can under this statute plead by way of reply the fraud, and have such fraud determined by a jury. In other words the statute is broad enough to cover a partial release as well as a full release. In so holding, we are not unmindful of the contrary ruling by the St. Louis Court of Appeals in Shoe Co. v. Insurance Co., 178 S. W. l. c. 248.

That court passes the question with a mere statement. There is no discussion of the reason of the rule. The statute specifically goes to releases made by one party to another. A release may be in full or it may be a partial release. If in full it can be pleaded as a complete bar to the action. If a partial release, it can be pleaded as a partial bar to the action. In either case, if fraud taints the release the remedy should be the same in both cases, and we believe the spirit of this statute covers the appraisement in this case.

Take the facts. The policy says the company and the insured shall try to agree upon the loss, but that if they cannot agree then each party shall select an appraiser and these two shall select an umpire, and the report of two of them shall be binding. In this particular case the evidence in the record tends to show that defendant's adjuster was of opinion that the damages to the building was about $9500 and Mr. Young, agent for plaintiff, was asserting damages much in excess of that sum. Under these circumstances the policy forced an appraisement, the effect of which, if it stands, is to give the insurance companies covering this loss a release of all claimed damages, except about $6000. We believe the statute broad enough to cover such case as is here presented. In other words, the report of the appraisers is a release of a part of plaintiff's claim or cause of action, and if not fraudulently procured binds the plaintiff as to the amount of damages.

It should be further noted that the statute uses the word "settlement" in addition to the word "release." The word "settlement" has at times a broader significance than of payment and satisfaction. It may and

often does mean an agreement by which parties having disputed matters between them reach or ascertain what is coming from one to the other. In this sense this appraisement may also be considered as a settlement agreement between the parties, and if procured by fraud, it falls within the statute. It is a settlement of the amount of damages made by the agents of the parties under and per force of the contract. The fraud of either party, or their agents should avoid it, and under the statute the question of fraud should be tried by jury.

III. But there is another sufficient answer to the claims of the defendant. This reply was at least good in equity. It charged the procurement of this particular appraisement to have been in fraud of **Equitable** plaintiff's rights. Concede for the purpose **Defense:** **Estoppel.** of this point, that the reply was equitable in nature, and that it would thrust the case from the law side to the equity side of the court, yet this does not help the defendant. The defendant sat by and made no objection to the trial of the case before a jury. The defendant proceeded to try the case as one at law, without objection, and the question comes too late in this court.

The demurrer was properly overruled even under defendant's contention here. That part of the reply stricken at by the demurrer set up facts which in equity would have entitled the plaintiff to relief from this appraisement. At most the reply could only change the issue to one in equity rather than at law, and the demurrer should have been overruled. This ruling properly made, then when defendant without objection proceeded to try the case as one at law, he is estopped here.

IV. It is next asserted that appraisements of this character will not be set aside save on clear and convincing evidence of fraud, misconduct or mis- **Evidence** take. For the purpose of this point we may **of Fraud.** concede this as a proposition of law.

We shall not go into the details of the vast volume of evidence offered in support of plaintiff's reply. Suffice

it to say that it shows some shocking conduct upon the part of the appraiser selected by the company and the umpire agreed to by the two other appraisers. Practically all the allegations in this reply were well sustained by the evidence. There was ample evidence upon which the jury could find fraud, and we are powerless to disturb their verdict, upon that question. If it was a question in equity, and the judgment here was one in equity setting aside this appraisement, we would heartily concur in the judgment. We need not go further on this contention.

V. It is next urged that the court erred in refusing to have the trial jury go to St. Louis, and view the property. It is true that the evidence as to the condition of this building after the fire was conflicting. But it must also be said that the evidence upon each side was clear and fully descriptive of the respective claims of the adverse parties. The trial court had all the facts before him, and we cannot say as a matter of law that he abused his discretion in refusing this request of the defendant. Such things are largely discretionary, and it is only when there has been a flagrant abuse of this discretionary power, that this court will interfere.

Viewing Property by Jury.

Whilst it is true the trial court seems to have put his refusal upon the ground that he was not empowered to make such an order, yet, although he put it upon that ground, his refusal amounted to nothing more than a denial to defendant of a mere discretionary right, and if under the facts there was no abuse of a sound legal discretion in the refusal, the defendant is not harmed by the statement of an erroneous ground by the court.

The refusal, upon whatever ground put, was not an abuse of a sound legal discretion. The court should not have stopped the trial of this case for practically two or three days to permit a jury to go from Mexico, Missouri, to St. Louis, Missouri, to examine the wreckage of this house. The witnesses had given the jury the facts clearly.

VI. It is next insisted that there was error in admitting evidence on a vexatious refusal to pay the loss. The statute reads:

"In an action against any insurance company to recover the amount of any loss under a policy of fire, life, marine or other insurance, if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not exceeding ten per cent on the amount of the loss and a reasonable attorneys' fee; and the court shall enter judgment for the aggregate sum found in the verdict." [R. S. 1909, sec. 7068.]

Vexatious Delay.

There is evidence in this case that the defendant's own adjuster estimated the damages at $9500. There is further evidence that they threatened to keep the case in court for five years if plaintiff did not accept the known fraudulent appraisement. These and other matters in the record were sufficient to submit the matter to the jury, and its finding is binding upon us as to the fact.

The foregoing covers the substantial contentions of the defendants, as found in the brief. The judgment should be affirmed and it is so ordered. All concur, *Bond, J.*, in result.