EQUITY MUTUAL INSURANCE CO., Appellant,

v.

Mildred R. CAMPBELL, Respondent.

No. WD 49340.

Missouri Court of Appeals, Western District.

Nov. 8, 1994.

Edward L. Smith, Kansas City, for appellant.

Harley Kent Desselle, Independence, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and SMART, JJ.

PER CURIAM:

This case involves an order entered by an umpire after an appraisal compensating an insured for a fire loss to her home. Equity Mutual Insurance Company ("Equity Mutual"), plaintiff, appeals from the trial court's entry of summary judgment finding the appraisal process proper and upholding the umpire's award of $20,500 in favor of Mildred R. Campbell, defendant.

Judgment is affirmed.

On November 2, 1992, Mildred Campbell suffered a fire loss to her home. Ms. Campbell's home was covered for fire loss by an insurance policy issued by Equity Mutual in effect on November 2. After the fire, Ms. Campbell hired Hartley Public Adjusters, Inc. as her agent to help in processing her claim against Equity Mutual. The insurance company rejected Ms. Campbell's claim of loss and appraisal was entered into pursuant to the insurance policy.

Both appraisers agreed that the amount of the loss was $27,022.51. Umpire David Baltis and Bob Morris, Ms. Campbell's appraiser, agreed that the actual cash value was $20,500.00, the policy limits. On August 17, 1993, Umpire Baltis entered an award for Ms. Campbell in the amount of $20,500. Equity Mutual filed a petition to set aside the appraisal award on October 15, 1993, alleging that the appraisal process and award were flawed and were the product of "carelessness" and "mistake." Among numerous additional allegations, the petition also alleged that neither the umpire nor the appraisers inspected all of the personal property and contents involved in the claim and therefore mistakenly concluded that the loss was total. Ms. Campbell filed a motion for summary judgment which was granted on March 10, 1994. Equity Mutual appeals from the judgment.

Plaintiff's sole point on appeal is that the trial court erred in granting defendant's motion for summary judgment in that the order found that the appraisal process was properly followed and the appraisal award was proper. Plaintiff claims the order is erroneous because plaintiff has raised factual issues of "misconduct" and "carelessness" in the appraisal process which are proper grounds justifying setting aside an appraisal award and preclude a finding that no genuine issue of material fact exists under Rule 74.04(c)(3).

In reviewing a grant of summary judgment, this court reviews the record in the light most favorable to the party against whom judgment is entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993). The insurance policy issued by Equity Mutual to Ms. Campbell provides that in the event of a dispute over the proof of loss, each party may choose a competent appraiser, and if the appraisers are unable to agree, the appraisers will choose an umpire. A dispute over the loss arose in this case and each party chose an appraiser. The appraisers were unable to agree upon an umpire and on July 14, 1993, David Baltis was appointed umpire by court order. The policy provides that a decision agreed to by any two of the three appraisers would set the amount of the loss. On August 17, 1993, defendant's appraiser and the umpire found the amount of loss to be $27,022.51 and the actual cash value to be $20,500. Plaintiff now complains about the appraisal process followed by the two appraisers and the umpire claiming they failed to inspect all of the damaged property and that they failed to consider that some of the damaged property had been repaired and placed back in service.

Plaintiff's petition to set aside the appraisal award alleged: 1) a failure to inspect all of the personal property and contents, which led to the mistaken conclusion that the loss was total, resulting in an award of damages

that was improper and illegal; 2) the umpire was not qualified to determine the value of personal property by his own admission; 3) the award failed to determine actual cash value, assumed the loss was total, and applied the value policy statute; 4) the appraisers failed to consider the fact that defendant was using items of personal property cleaned after the fire and not valued at the time of appraisal; and 5) defendant failed to seek the services of a disinterested appraiser. In the summary judgment order, the trial judge stated:

> Neither party has attacked the validity of Plaintiff's policy. The policy clearly delineates the process to be followed when the parties cannot agree on the amount of the loss. The parties followed the mandated procedure. Plaintiff cites various authorities supporting his [sic] position that it is not compelled to submit to the award. However, Plaintiff's citations refer generally to cases in which one or more of the appraisers demonstrated fraud, misconduct, partiality or lack of disinterest. In the instant case Plaintiff challenges the Court appointed umpire's competence, not his integrity.

> It appears to the Court that all parties followed the policy provision concerning the determination of the amount of loss, Plaintiff did not agree with the result, and is now attempting to avoid complying with its own policy provisions. To permit Plaintiff now to avoid paying the award by attacking credentials of the Court appointed umpire, would thwart the very purpose of the policy provisions. This appears to be that relatively rare case in which summary judgment is appropriate. This Court therefore concludes "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" as required by 74.04(c)(3).

Plaintiff claims that the trial judge failed to look at and address specific factual allegations pled which, if true, justify the setting aside of the appraisal award.

■ Plaintiff contends that it has raised genuine issues of fact which preclude entry of summary judgment. First, plaintiff claims that the court ignored the fact that all personal property was not inspected during the appraisal process. After the appraisal, plaintiff claims that its appointed appraiser, Bob Brandt, confessed that during the appraisal he viewed only four or five items of personal property located in an 8 × 10 shed on the property. The shed contained ten or fifteen boxes which allegedly contained burned items of personal property. Mr. Brandt never looked inside the boxes located in the shed. Thus, plaintiff claims, he never determined if the items on the appraisal sheet were actually destroyed. Further, plaintiff claims, there was no attempt made to determine an actual cash value of the destroyed items. Plaintiff argues that unless an actual cash value of destroyed items is determined there can be no accurate finding that the losses reached policy limits. Plaintiff claims that plaintiff's appraiser took defendant's appraisal sheets and estimated what would be a fair value of the items on the sheet. The appraiser allegedly did this without ever viewing the items listed on the sheet. Plaintiff claims that an accurate appraisal cannot be made by simply assuming that all items listed on an appraisal sheet were destroyed, without viewing the items. Plaintiff-appellant contends that all items need to be viewed, their damages ascertained and value determined.

Citing *St. Paul Fire and Marine Ins. Co. v. Tire Clearing House*, 58 F.2d 610 (8th Cir.1932) and *Young v. Pennsylvania Fire Ins. Co.*, 269 Mo. 1, 187 S.W. 856 (banc 1916), plaintiffs claim that an appraisal award may be set aside for fraud, misconduct, carelessness or partiality on behalf of one or more of the appraisers. In this case, the appraisal process as set forth in the insurance policy was followed. Each appraiser agreed that the value of the loss exceeded the policy limits. Mr. Morris and Umpire Baltis agreed that the actual cash value equalled the policy limit. Plaintiff complains that each piece of property was not individually examined. The insurance policy did not specifically provide that each appraiser must view each piece of damaged property in calculating the amount of loss. The record fails to show any fraud or other misconduct on the part of the appraisers. An appraisal is said to be conclusive as to amount of damages

unless fraudulently procured. *Young*, 187 S.W. at 860. Nothing in this case indicates that the award was fraudulently procured.

■ Plaintiff claims that the appraisal process was further flawed due to defendant's failure to appoint a disinterested appraiser and because the umpire was unqualified. In its brief plaintiff states the following: "Appellant would like to be able to cite substantial evidence in the record showing a lack of impartiality and evidence that the umpire was unqualified. Unfortunately, this case was summarily dismissed before appellant was able to fully explore the alleged improprieties through discovery." Plaintiff by its own admission can point to nothing to support its claim of partiality. This court will not authorize a fishing expedition based on the fact that plaintiff insurance company is unhappy with the result of the appraisal process which it insisted upon. The time to attack the credentials of the court appointed umpire was at the time of the appointment. Similarly, if plaintiff believed defendant's appraiser was not qualified, plaintiff should have challenged the appraiser at the time of designation. At a minimum, plaintiff should have filed a Rule 74.04(f) affidavit requesting a continuance until discovery could be had on these issues. The trial judge correctly rejected plaintiff's contentions. There was no genuine issue as to any material fact. Summary judgment was properly entered. Judgment is affirmed.