## MOSES LEON and MILTON LEON v. BARNSDALL ZINC COMPANY, Appellant.

### Division One, July 1, 1925.

1. **CONTRACT: Dependent upon Another Contract: Expiration: Assignment: Forfeiture.** Where the owners of land contracted with plaintiffs to prospect for lead and zinc thereon for twelve months, and if such ores were within the year developed "in sufficient quantities to make the mining and marketing thereof profitable" plaintiffs were to have a ten-year lease, and two months after the end of the year plaintiffs were still in possession of the land and carrying on their drilling and other prospecting operations and were contending that they had fully complied with the contract and were entitled to a lease, and no forfeiture had been declared by the landowners, who had done nothing inconsistent with a recognition of the continued existence of the contract, a contract then entered into by plaintiffs with the defendant by which they sold and assigned to defendant "all of their right, title and interest in and to said contract for a mining lease" cannot be disposed of by a holding that the first contract had come to an end, that plaintiffs were mere licensees and hence defendant got nothing by its purchase.   Whether ore had been developed "in sufficient quantities

Leon v. Barnsdall Zinc Co.

to make the mining and marketing thereof profitable," and whether the plaintiffs were entitled to a lease, were subjects of controversy between them and the landowners; and even though, according to the terms of their contract with the owners, they had forfeited their right to a lease, such forfeiture could have been waived, and in any event did not take effect and become operative in the absence of a declaration of forfeiture by the landowners, or by some act or conduct on their part amounting to such declaration; and as the defendant, with full knowledge of what the plaintiffs had actually done under the contract, and of the landowners' contention that what was done did not amount to performance, bought merely "all of their right, title and interest in and to said contract," defendant took all the risk of the existence of a right in the plaintiffs to a lease under the contract, and is bound with whatever obligations it assumed in its contract of purchase.

2. ———: Rescission: Option to Terminate: Precedent Conditions. It is competent for parties to a contract to provide therein that it shall come to an end at the option of one or either party, but the conditions imposed as precedent to the right to terminate must be complied with; and where defendant terminated the contract, which by its terms it had a right to do, it must pay the money and perform the obligations which by its terms it assumed to pay and perform upon termination.

3. ———: Breach: Measure of Damages: Pleading: Nature of Action: Recovery of Purchase Money: Damages. The measure of damages is always dependent upon the nature of the action. Where plaintiffs sue on a contract by which they assigned their interest in a mining lease to defendant, if a recovery of the purchase money promised to be paid for the assignment is the object, an action analogous to the common-law action of debt, or special *assumpsit*, wherein plaintiffs declare on the debt or special promise, leaving to defendant to plead and to carry the burden of establishing its defense of rescission, is the most suitable; but if the object is to recover damages for a breach of the covenants to drill and prospect for ore, such an action is not appropriate. But in this case, wherein plaintiffs allege both that defendant had failed to pay the purchase-money installments promised by the contract and that defendant had failed to perform the condition whereby it would be relieved from such payments, these allegations are taken conjointly as tantamount to an allegation that defendant had failed to make the purchase-money payments, and the action is considered as one for unpaid purchase money.

4. ———: Renunciation: Before Time of Performance: Unpaid Purchase Money: Maturity of All Installments: Premature Suit. The

doctrine that the renunciation of a contract, covering the entire performance, before the time of performance, is such a breach as gives an immediate right of action, applies to contracts which are, at least in part, mutually executory, and contain interdependent obligations; it cannot be applied to contracts to pay money at specified times, where one of the parties has completely executed the contract, and it is executory only on the part of the other. Where the plaintiffs assigned to defendant a mining lease for six thousand dollars, which sum was to be paid in six monthly installments of one thousand dollars each, and defendant was given the right to rescind the contract, but agreed to continue the drilling from the date of the contract to the end of thirty days after rescission, and did rescind and surrendered all their rights under the lease and ceased drilling, when only two installments were due, plaintiffs, by suit brought six days thereafter, in which the allegations of the petition are such that it must be construed to be an action to recover unpaid purchase money, cannot have judgment for the six installments, but as to four of them the suit is premature.

Corpus Juris-Cyc. References: Contracts, 13 C. J., Section 631, p. 606, n. 90; Section 633, p. 607, n. 13; Section 728, p. 655, n. 75, 76; Section 802, p. 700, n. 56. Mines and Minerals, 27 Cyc. p. 692, n. 10, 10 New; p. 703, n. 99 New. Vendor and Purchaser, 39 Cyc. p. 1212, n. 58.

Transferred from Springfield Court of Appeals.

REVERSED AND REMANDED (*with directions*).

*A. W. Thurman* and *Paul G. Koontz* for appellant.

(1) The plaintiffs claimed that they had worked continuously as provided therein and had discovered ore bodies within a year. The landowners had consented and knew of the working conditions thereafter; having given such consent and being in default the forfeiture was not binding. Forfeitures are not favored and the law looks with disfavor upon one who is induced or assented to conditions of which he complains. Weaver Mining Co. v. Guthrie, 189 Mo. App. 108; Consumers Gas Co. v. Ink, 71 N. E. 477. (2) The court erred in refusing to sustain the defendant's demurrer at the close of the plaintiff's evidence and at the close of all the evidence. There was

no allegation in the plaintiffs' petition of any damage. The right to rescind was provided by contract. Parties have the right by mutual agreement to rescind either by the contract itself, or by subsequent contract. Black on Rescission, secs. 512, 521, 517, 528, 535; Hutchinson v. Jones, 79 Mo. 496. A contract may provide that it shall come to an end at the option of one or either of the parties. Boor v. Kimball, 46 Ill. App. 327; Morse v. Brummel, 36 Neb. 766; 9 Cyc. 600. The assent of both parties to rescind is sometimes expressed in the original contract as holding an option to rescind is given to one or both of the parties. 6 R. C. L. secs. 305, 922; Williamson v. Hill, 154 Mass. 117, 13 L. R. A. 690; Crescent Mfg. Co. v. Nelson Mfg. Co., 100 Mo. 325. The contract further provided that in the event of surrender then respondents should hold and keep all payments as liquidated damages. The parties by the contract fixed their damages which were the payments received at the time. The parties measured their own damages. The respondents were bound by the agreement to accept the payments as their damages. May v. Crawford, 150 Mo. 504; Wise v. United States, 249 U. S. 358, 63 L. Ed. 647. (3) The court erred in giving plaintiff's Instruction 1. The contract providing for the payment of $6000 was conditional. The defendant was not to be liable on giving notice and reassignment. The obligation of the contract was at an end on the giving of the notice and the surrender of the assignment. The plaintiff alleged that the defendant failed to pay the obligation which was at an end. In the prayer of the plaintiff's petition the plaintiff alleged that the defendants failed and refused to comply with the contract as therein stated and caused and permitted the forfeiture of the rights of the plaintiffs under the Greer contract to the plaintiff's damage in the sum of $6000. The petition did not allege any damage or any special damage. The petition proceeded on the theory that the plaintiffs were entitled to recover the $6,000. The plaintiff declares on a contract that had been rescinded and no special damages were pleaded. The character of the

action is to be determined from the averment of the petition, and it is sometimes difficult to say whether the pleader has declared on express contract or has merely pleaded one as a matter of inducement and sought relief for tort. Mossup v. Casualty Co., 137 Mo. App. 399; 21 Ency. Pl. & Pr. 913; Fisher v. Gobel, 40 Mo. 475; Fontaine v. Schulenberg, 109 Mo. 55; Bear Cat Mining Co. v. Chemical Co., 247 Fed. 286; Sedgwick on Damages (9 Ed.) secs. 205, 620; Warren v. Stoddort, 105 U. S. 224, 26 L. Ed. 1117.

*McReynolds & Blair* and *John H. Flanigan* for respondents.

(1) There was a contract of sale by the Leons and of purchase on the part of defendant, followed by a breach of contract by the vendee, authorizing a recovery of damages on account of said breach. Vendor and Purchaser, 39 Cyc. 1992, sec. B; Norris v. Lechtworth, 140 Mo. App. 19; Pritchard v. Mulhall, 103 N. W. 774; Wasson v. Palmer, 22 N. W. 773; Hogan v. Kyle, 35 Pac. 399. (2). The judgment of the court for six thousand dollars was a correct application of this rule. The testimony shows that the lease had been forfeited on account of the conduct of the defendant. The theory of the plaintiff is that the forfeited lease had no value and having no value, the difference between that amount and the contract price was six thousand dollars, which constituted the measure of damages. (3) The contract was completed between the parties except for the payment of the remaining six thousand dollars of purchase price. Two payments were past due at the time the suit was instituted. "Where a party bound by an executory contract repudiates his obligation before the time of performance, the promisee has according to the great weight of authorities the option to treat the contract as ended so far as further performance is concerned, and to maintain action at once for damages incurred by such anticipatory breach." 12 C. J. 651; Regal v. Gallager, 188 S. W. 151; Puckett v. Natl.

Annuity Co., 134 Mo. App. 501; Central Trust Co. v. Auditorium Assn., 240 U. S. 581; Roehm v. Horst, 178 U. S. 1; Gilman v. Lamson Co., 234 Fed. 507; Stoner-McCray System Co. v. Oil Co., 156 N. W. 683.  (4) Respondent's cause of action was based upon the contract of November 18th by terms of which the defendant purchased plaintiff's contract for a lease. Respondent's theory in the lower court was that it was a suit for the purchase price. The court tried it on the theory that it was a suit for damages for breach of contract and made a finding accordingly. It is immaterial which theory is adopted in this court, for the reason that under the facts and the law the result must be identical. Krepp v. Railroad, 99 Mo. App. 95.

RAGLAND, P. J.—This appeal comes here on certification by the Springfield Court of Appeals. The action in form is one for damages for breach of contract. The subject-matter of the contract declared upon was the assignment and transfer of a certain contract for a mining lease theretofore entered into between the plaintiffs, Leons, and Laura Greer, et al., the owners of 400 acres of land in Cherokee County, Kansas. The material portions of the latter contract, which will be herein referred to as the Greer contract, were as follows: "That the first parties (Laura Greer et al.) do hereby give and grant to second parties (the Leons) the right for twelve months from the date hereof, to go upon the following described premises (the land above referred to)  . . .  and to search and prospect for and mine said land for zinc and lead ores and other minerals thereon during said period upon and subject to the following conditions:

"Said second parties shall begin drilling on said land and have a drill thereon in operation within sixty days from the date of this contract, and shall carry on prospecting, by drilling, and work continuously during the life of this contract. It is further agreed that if parties of the second part shall perform all the conditions of this contract in good faith and shall at any time de-

velop lead and zinc ores upon said premises in sufficient quantities to make the mining and marketing thereof profitable, then the parties of the first part will properly execute and deliver to parties of the second part a mining lease upon the above described premises, for a period of ten years from this date, at a royalty of ten per cent of the gross price received for all lead ores and ten per cent of the gross price received for all the zinc ores mined from said land   .   .   .

"This contract and any lease provided for herein shall not be assigned by the parties of the second part except in writing, stating fully the conditions and terms of such assignment, and immediately after making such assignment or subletting the parties of the second part shall furnish parties of the first part a copy of such assignment or sublease.   .   .   .

"The right to prospect said land under this contract shall continue to parties of the second part as long as they shall carry out each and every condition herein, not to exceed a period of twelve months from the date hereof, and any failure on the part of the parties of the second part to carry out any and all conditions of this contract, in good faith, shall immediately terminate same, and parties of the first part may take possession of said property without notice to quit, demand of possession or any legal proceedings whatever."

The contract in suit was entered into on the 18th day of November, 1919. The portions relevant to this controversy are as follows:

"That the parties of the first part (the Leons) for and in consideration of the sum of two thousand dollars in cash, receipt of which is hereby acknowledged, and in consideration of the additional sum of six thousand dollars to be paid as hereinafter provided by the party of the second part (the Barnsdall Zinc Company), the parties of the first part do hereby grant, bargain, sell and assign all of their rights, title and interest in and to said contract for a mining lease (the Greer contract) upon the said four-hundred-acre tract, and the lease to be

granted thereunder . . . That the deferred payments of $6,000, the party of the second part agrees to pay, except in event of surrender as hereinafter provided, as follows: One thousand dollars on January 17, 1920; one thousand dollars on February 17, 1920; one thousand dollars on March 17, 1920; one thousand dollars on April 17, 1920; one thousand dollars on May 17, 1920; one thousand dollars on June 17, 1920. . . . It is expressly understood and agreed that the party of the second part will comply with and perform the obligations of said contract relating to drilling and prospecting thereon, and will push the same with due diligence and will not suspend the same, except on account of unavoidable circumstances such as strikes or inability to procure coal, and will continue such drilling and prospecting during such deferred payments, and it is further expressly provided that the party of the second part shall have the right, by giving to the parties of the first part thirty days' notice in writing of its desire to surrender and assign the rights granted hereunder, by letter addressed to them at Locust Grove, Oklahoma, duly deposited in mail, postage prepaid; that the party of the second part desires to surrender said lease and premises to the parties of the first part, and to re-assign the same to the parties of the first part, and on such notice the party of the second part shall be relieved from making any further deferred payments after the mailing of said notice, and the parties of the first part agree to accept such surrender and assignment in lieu of any payments after such notice and party of the second part shall be relieved of such obligation. But, it shall be the duty of the party of the second part, and the party of the second part agrees to continue drilling and prospecting for thirty days after the mailing of said notice. . . .

"That the parties of the first part shall deliver the original contract and copies or leases and contracts to the party of the second part; but in the event of surrender hereunder as provided herein; the same shall be

re-delivered with the assignment to the parties of the first part..

"That in the event of surrender by the party of the second part all payments made prior thereto shall be held and kept by the parties of the first part as liquidated damages and as a part of the consideration for the granting of this instrument."

There was evidence tending to show that plaintiffs within sixty days after the date of the Greer contract began drilling on the land therein described and thereafter through their tenants and sub-lessees continuously carried on prospecting by drilling and work until the 18th day of November, 1919, the date of the execution of the contract of assignment just set out. Prior to that date, however, some of the landowners had complained that the work of prospecting had not been carried on as vigorously as the Greer contract required, and one of them had stated that he considered that that contract by virtue of its own terms had come to an end. Plaintiffs on the other hand were contending that they had fully complied with the contract and were entitled to the mining lease therein specified. No forfeiture had been declared by the landowners and they had done nothing inconsistent with a recognition of the continued existence of the contract; plaintiffs were still in possession of the land carrying on their drilling and other prospecting operations. With full knowledge of the facts just outlined the defendant entered into the contract which forms the basis of this controversy.

Upon taking an assignment of the Greer contract on November 18th, 1919, the defendant at once engaged in drilling and prospecting as required by that contract, as well as by the terms of the assignment. This it continued to do until about the middle of January, 1920, when, the drilling having disclosed no satisfactory evidence of ore in paying quantities, it abandoned further operations and did no drilling thereafter. On February 16, 1920, by a letter addressed to plaintiffs at Locust Grove, Oklahoma, it notified them that it desired to surrender and re-assign all rights under the Greer contract. It enclosed

with the letter a written re-assignment in due form. On February 18th, notice of forfeiture of such rights and resumption of the possession of the land was given by the owners. On February 23d this suit was instituted.

The petition alleged the execution of the contract of assignment and averred that it had been breached by the defendant. The principal assignments are as follows:

"That defendant did not make the payment of one thousand dollars on January 17, 1920, . . . and did not theretofore give any notice of its intention not to proceed under said contract thirty days before January 17, 1920, or at any other time before said date in January, but instead of so complying with said contract, the defendant ceased drilling and all other prospecting operations on said lands and long after so ceasing operations, to-wit, on February 16, 1920, wrote plaintiffs a letter stating that it did not intend to proceed with further drilling on said lands and sent with said letter an assignment to plaintiffs of said contract of November 18, 1919; . . . that defendant has never . . . paid to plaintiffs . . . any sum of money under said contract of November 18, 1919; . . . that defendant, some time in the month of January, 1920, or in the month of February, 1920, without the knowledge or consent of plaintiffs, and without having given the plaintiffs any notice, as provided in said contract of November 18, 1919, ceased drilling and thereafter conducted no prospecting or other mining operations on said lands, and thereafter, on or about the 19th day of February, 1920, the said Laura Greer et al., by reason of the failure of defendant so to continue drilling on said lands, forfeited the rights granted by them under said contract for a lease from Laura Greer et al., and took possession of the lands in said contract described."

The petition concluded as follows:

"Plaintiffs state that they have in all things complied with the conditions of said contract of November 18, 1919, upon their part, but that defendant has failed

and refused to comply with said contract on its part, as hereinabove stated, and has caused and permitted the forfeiture and determination of the rights granted by said contract from Greer et al., to a mining lease upon said lands, all to plaintiffs' damage in the sum of six thousand dollars.''

The answer consisted of a general denial, a plea of want of consideration and a counterclaim. The counterclaim was in the nature of a cross-action for fraud and deceit. It was alleged that defendant had been induced to enter into the contract and part with $2,000 of its money through false representations made by plaintiffs with respect to the deposits of ore that had been developed by the drill. A recovery was sought of the $2,000 and in addition the sums which defendant had expended in drilling.

A jury was waived. The court after hearing the evidence found for plaintiffs on the cause of action set forth in their petition and assessed their damages at $6,000; it also found for plaintiffs on defendant's counterclaim. From the judgment entered in accordance with such findings defendant appeals.

A large part of the evidence offered on the trial went to the issues tendered by the counterclaim. With respect to these the court properly declared the law, but found against the defendant on the facts. This phase of the case we will dismiss from further consideration. Other declarations of law, given and refused, need not be set out in detail. The principal questions raised by them are: (1) whether there was any consideration for the contract sued on; (2) whether a rescission of the contract was effected by defendant; and (3) whether, if the contract was supported by a consideration and defendant did not accomplish its rescission, plaintiffs showed themselves entitled to more than nominal damages.

I.   While defendant's answer averred that there was no consideration for its promise to pay for the alleged right to a mining lease transferred to it by plaintiffs, that

contention was not featured in the trial below, nor is it
pressed here. However, the case was disposed
of on that ground by the Springfield Court of
Appeals, to which the appeal in the first instance lay, a
majority of the court holding that the Greer contract
"came to an end September 1, 1918, and after that time
the plaintiffs and those holding under them were mere
licensees, and the contract which they sold to defendant
was without either life or value, and hence defendant got
nothing by its purchase." In view of that holding the
question will be briefly considered.

*Forfeiture.*

The general situation with respect to the status of
the Greer contract at the time of its assignment to de-
fendant has already been set forth. It may be said
further that the evidence tended to show that deposits
of ore had been found, a shaft had been sunk and some
mining machinery had been installed. Whether ore had
been developed "in sufficient quantities to make the min-
ing and marketing thereof profitable" and whether the
Leons were entitled to a lease were subjects of contro-
versy between them and the landowners. The Leons
were in possession of the land, they were carrying on
prospecting operations and they were claiming the right
to a lease. Under such circumstances, even though they
had according to the terms of the contract forfeited the
right to a lease, such forfeiture could have been waived
and in any event did not take effect and become opera-
tive in the absence of a declaration of forfeiture by the
landowners, or some act or conduct on their part amount-
ing to that. [King v. Seebeck, 20 Idaho, 223, 233.] With
full knowledge of what the Leons had actually done under
the contract, and of the landowners' contention that it
did not constitute performance, the defendant bought
merely "all of their right, title and interest in and to said
contract." In so doing it took all the risk of the exist-
ence at that time of a right in the Leons under the con-
tract to a lease; if no such right then existed in fact the
defendant would not thereby be relieved from paying the
purchase price on the ground of failure of consideration.

[Carter v. Butler, 264 Mo. 306; Kellogg v. Malin, 50 Mo. 496, 503; 39 Cyc. 1112 n. 58.]

II. Appellant's principal contention is that by giving notice of its intention to surrender and re-assign the Greer contract and executing a re-assignment pursuant thereto it relieved itself of liability for install-ments of the purchase money falling due there-after. It is of course competent for the parties to a contract to provide therein that it shall come to an end at the option of one or either of them, but the conditions imposed as precedent to the right to terminate must be complied with. [Insurance Co. v. Hamilton, 143 Mo. App. 237.] The contract between plaintiffs and defendant evidenced a fully consummated sale to defendant of the Greer contract and all rights accruing to plaintiffs thereunder; both title and possession passed; as to plaintiffs the contract of sale was fully executed. On the part of defendant nothing remained to be done except to pay the balance of the purchase money, or relieve itself from such payment by doing certain things. What were those things? The contract provided that defendant should comply with and perform the obligations of the Greer contract relating to drilling and prospecting until the deferred payments were all made, and that if prior to that time it gave notice of intention to surrender and re-assign, it would continue drilling and prospecting for thirty days thereafter. Now it is obvious that these obligations to drill and prospect were exacted of defendant in consideration of the option given it to rescind. But for that option it could not have made the slightest difference to plaintiffs whether defendant carried out the provisions of the Greer contract, or forfeited it. If on the other hand they were required, at the election of defendant, to forego the payment of the remainder of the purchase money, or any part of it, and take the Greer contract back in lieu of it, they would want as an approximate return to the *status quo* that the rights under that contract be intact and that the work of developing the presence or absence of ore should have

*Rescission.*

been carried forward just as it would have been if no sale had been made. Having in mind the evident purposes of the stipulations of the contract in question with respect to drilling and prospecting, it is clear that the parties intended that a compliance with them should be as much of a prerequisite to a rescission as the giving of notice and the execution of a re-assignment. It is conceded that defendant did not continue drilling for thirty days after the notice of surrender was given, but ceased all operations of that kind thirty days prior thereto. There was therefore no rescission.

It is claimed by appellant that the attempted forfeiture by the landowners was ineffective. But whether the failure of defendant to drill and prospect after the middle of January operated as a forfeiture is wholly immaterial. The plaintiffs agreed to accept the surrender and re-assignment of the contract for a mining lease on the condition, among others, that the drilling operations required by it had been carried forward uninterruptedly down to the time of the offer to surrender., That condition was a substantial term of the contract, it was not performed by the defendant and its non-performance precludes its right to rescind, regardless of whether a forfeiture resulted therefrom.

III. The measure of damages is dependent upon the nature of the action. The petition is amorphous. One is unable to tell from a first reading whether it seeks recovery of purchase money, or damages for a breach of the covenants to drill and prospect. If a recovery of purchase money was plaintiff's objective, an action analogous to the common-law action of debt, or that of special *assumpsit,* would obviously have been the most suitable. In such a proceeding plaintiffs would have declared on the debt, or special promise, leaving to defendant to plead and carry the burden of proof in establishing its defense of rescission. Plaintiffs, however, alleged both that defendant had failed to pay the purchase-money installments and that

*Measure of Damages: Pleading.*

309 Mo. Sup.—19.

it had failed to perform the condition whereby it would be relieved from such payments. These allegations taken conjointly are tantamount to an allegation that defendant has failed to make the purchase money payments, with respect to which its obligation has become absolute. We conclude therefore that the action may be reasonably considered as one for purchase money—as the respondents contend.

It is apparent that plaintiffs in casting their petition in the form in which they did were endeavoring to state a case within the purview of the doctrine that the renunciation of a contract, covering the entire performance, before the time of performance is such a breach as gives an immediate right of action. That doctrine, however, applies only to contracts which are at least in part mutually executory, where there are interdependent obligations. It cannot be invoked with respect to contracts to pay money at specified times, where one of the parties has completely executed the contract, and it is executory only on the part of the other party. [Roehm v. Horst, 178 U. S. 1; Moore v. Security Trust & Ins. Co., 168 Fed. 496; Washington County v. Williams, 111 Fed. 801; Nichols v. Scranton Steel Co., 137 N. Y. 471; 13 C. J. 655.] It follows that this suit was prematurely brought as to the four installments which under the terms of the contract were not due at the date of its institution.

*Premature Suit.*

The judgment of the circuit court is therefore reversed and the cause remanded, with directions to that court to enter judgment for plaintiffs for the installments which were payable in January and February, 1920, respectively, with interest on each from its due date. All concur.