STATE OF MISSOURI at the relation of METROPOLITAN LIFE INSURANCE COMPANY, Relator, v. PERRY T. ALLEN, ROBERT J. SMITH and WALTER E. BAILEY, Judges of the Springfield Court of Appeals. —100 S. W. (2d) 487.

Division One, December 14, 1936.

*Edgar & Banta, Fordyce, White, Mayne & Williams* and *Raymond E. LaDriere* for relator; *Harry Cole Bates* of counsel.

*Davis & Damron* and *L. W. Chapman* for respondents.

BRADLEY, C.—Certiorari to review the record of the Springfield Court of Appeals in Young v. Metropolitan Life Insurance Company, 84 S. W. (2d) 1065. In such proceeding we are concerned only with the question of whether or not the challenged opinion conflicts with the last controlling decision of this court on the points ruled. [State ex rel. Missouri Mut. Assn. v. Allen et al., 336 Mo. 352, 78 S. W. (2d) 862, l. c. 863, and cases there cited.] The Young case, we ascertain from the opinion, was an action "to recover certain benefits provided in the total disability clause contained in a group life insurance policy" issued by relator to St. Joseph Lead Company, by which policy certain employees of the lead company were insured. Young was a former employee of the lead company and sought to recover on the theory that he was covered by the policy and was totally and permanently disabled while so covered. We quote from the opinion the following (more appears hereinafter) as to the pleadings: "In his petition, after setting out the terms of the policy, plaintiff alleges, among other things, that on the 10th day of February, 1932, and long prior thereto, while said insurance was in force and at a time when he was employed by the St. Joseph Lead Company, he was afflicted with certain ailments and diseases in the petition described, as a result of which he was and is totally, permanently and continuously disabled, and wholly prevented from performing any work for compensation or profit; that he became so disabled before attaining the age of sixty years; that he completed due proof of said disability on June 17, 1932; that defendant rejected said proof and refused to pay plaintiff the amount due under said policy; that there is now due eleven monthly installments of $44.92 each, or a total of $494.12, which upon demand defendant has refused to pay, for which judgment is prayed.

"Defendant filed a demurrer to the petition on the ground that the petition showed upon its face that the trial court had no jurisdiction;

the theory being that but one installment was due at the time suit was filed, which was below the jurisdiction of the court. This demurrer was overruled. Defendant thereupon filed an answer denying that plaintiff was totally and permanently disabled while employed by the St. Joseph Lead Company and while the insurance was in force; that if he was totally and permanently disabled, such disability arose after plaintiff's employment ceased. The answer further contained a denial that due proof had been made as required by the policy.

"Plaintiff filed a reply denying generally the allegations of the answer, and alleged further that since the filing of the suit defendant had become indebted to plaintiff for eight additional installments for which judgment was prayed. Defendant's motion to strike the reply was overruled."

Relator contends that the opinion by respondents conflicts with the last controlling decision of this court in three particulars, viz.: (1) In holding that the defense of premature filing of the suit was lost to relator because not pleaded in its answer; (2) in holding that the letter, of relator, dated November 7, 1932, waived, not only due proof, but also waived the six months waiting period, which, under the policy, commenced to run on filing due proof; and (3) in holding that the trial court had jurisdiction.

Respondents disposed of the defense of premature filing as follows: "Defendant contends that this suit was premature for the reason that the purported proof of disability was not completed until October 24, 1932, and since monthly payments were not to commence under the terms of the policy until six months thereafter, a suit brought January 11, 1933, was therefore premature. Whatever merit there may be in this contention is lost to defendant because no such defense was pleaded in its answer. The only reference to the six months' period is couched in the following language: 'And defendant, further answering the petition of plaintiff herein, denies that six months prior to the filing of his petition plaintiff made due proof to the home office of defendant, in accordance with the terms and conditions of said policy of insurance, to the effect that plaintiff became totally and permanently disabled while in the employ of the St. Joseph Lead Company, and while said insurance was in force and effect as to plaintiff.'

"In the first place, there was no allegation in the petition to which this denial could be directed. In Giboney v. German Insurance Co., 48 Mo. App. 185, l. c. 193, it is pointed out that such pleading constitutes 'a denial and not an assertion of the fact which is now set up to defeat plaintiff's recovery.' So in Young v. Pennsylvania Fire Ins. Co., 269 Mo. 1, 187 S. W. 856, 858, in discussing a similar situation, the Supreme Court said: 'As said by ROMBAUER, P. J., in

Giboney v. Insurance Company, 48 Mo. App. 185, the question of a premature suit is in the nature of a plea in abatement, and not a plea in bar. Such matters should be specifically pleaded. The answer in this does not invoke this plea in abatement. A mere general denial is not sufficient. A plea in abatement is in the nature of an affirmative defense, and must be specially pleaded to be available." We think the foregoing authorities sufficiently dispose of this assignment.''

Relator contends that the ruling so made on the question of premature filing is in conflict with the rulings by this court in Jenkins v. Wiley, 300 Mo. 110, 254 S. W. 94; State ex rel. Kansas City Light & Power Co. v. Trimble et al. (Mo.), 262 S. W. 357; State ex rel. Jones v. Mallinckrodt Chemical Works, 249 Mo. 702, 156 S. W. 967; Houtz v. Hellman, 228 Mo. 655, 128 S. W. 1001; Heard v. Ritchey et al., 112 Mo. 516, l. c. 519, 20 S. W. 799.

Neither of the first three cases cited rules a question on a suit being prematurely filed. The first two concern, among other things, a question of misjoinder of parties, and the third case concerns a defect of parties. Manifestly the opinion under consideration is not in conflict with any ruling in these three cases on a question of premature filing. In the Houtz case there is an interesting discussion on the situation of a defendant where a demurrer to some of the defenses has been sustained and amended answer is filed, but in that case the court reserved ruling, because the appellant did not assign error on the points considered in the discussion. There could be no conflict with the Houtz case if there was no ruling, but we might say in passing that the Houtz case does not involve a question of premature filing.

In the Heard case (which, we may say, was a suit on a note not signed by defendants), the petition on its face showed that the note was not due when the suit was filed. Defendants answered by a general denial. At the beginning of the trial defendants interposed an objection to the introduction of any evidence "because the petition did not state facts sufficient to constitute a cause of action." The objection was overruled, but at the close of the case the court sustained a demurrer to the evidence and plaintiff took an involuntary nonsuit with leave to move to set the same aside. The court refused to set the nonsuit aside and plaintiff appealed. This court ruled: ". . . whether we regard the action as founded on the original contract, as in the first count, or on the note, as in the second count, plaintiff stated no cause of action due at the time, and the court erred in not sustaining defendants' objection to the introduction of any evidence under the petition. (Citing cases.) This error was afterwards cured, however, by the court's ruling on the demurrer to the evidence.''

As appears, relator here, in the case ruled by respondents, filed a demurrer to the petition, which was overruled. In the Heard case

the ruling, in effect, was that defendants raised the question of premature filing of the suit by the *ore tenus* demurrer and that it remained raised, and relator here argues that in the case before respondents the point was not waived or made unavailable because not raised by plea in abatement. But there is a distinction between the petition in the Heard case and the petition before respondents. In the Heard case the petition showed on its face that the suit was filed before the note sued on was due, but in the case before respondents the petition did not show on its face that sufficient installments under the policy were not due when the suit was filed to give the circuit court jurisdiction of the amount involved. We so state on the theory that the first installment under the policy became due upon denial of all liability by relator, as respondents ruled, and which subject we consider at some length hereinafter. The Court of Appeals, to sustain the ruling that relator should have proceeded by plea in abatement to raise the question of premature filing, relied upon Young v. Penn. Fire Ins. Co., 269 Mo. 1, 187 S. W. 856. It does not appear in that case that a demurrer to the petition, *ore tenus* or otherwise, was filed. It would seem, however, that the ruling as to the procedure to raise the question of premature filing was on the premise that only a general denial had been filed. But the language, ruling the point, is broad and without qualification, and the general rule is as stated in Young v. Penn. Fire Ins. Co., supra. [1 C. J. 107; 1 C. J. S. 125.] But in any event respondents in the result reached on the question of premature filing did not rule contrary to any prior ruling of this court called to our attention or that we find.

■ The second alleged conflict is: That respondents in holding that the letter, of relator, dated November 7, 1932, waived, not only due proof, but also waived the six months' waiting period, which under the policy, commenced to run on the filing of due proof. This second alleged conflict is closely related to the first and the two might have been considered as one, but relator makes the points separately and we so consider them. Respondents held that "defendant had denied all liability under the policy as to plaintiff by letter dated November 7, 1932. It further denied that the proofs submitted were sufficient, but after having itself made a thorough investigation of the case did in effect repudiate the contract. Under such circumstances we think the effective date upon which defendant would become liable to pay on the policy would be from the date of the repudiation of the contract, or November 7, 1932, which was within the waiting period."

Relator contends that such ruling is in conflict with the rulings by this court in Leon v. Barnsdall Zinc Co., 309 Mo. 276, 274 S. W. 699, and Young v. Penn. Fire Ins. Co., 269 Mo. 1, 187 S. W. 856. Relator also cites, from the Courts of Appeals, Moss v. Metropolitan

Life Ins. Co. (Mo. App.), 84 S. W. (2d) 395; Farmer v. Metropolitan Life Ins. Co. (Mo. App.), 85 S. W. (2d) 235; Buis v. Prudential Ins. Co. (Mo. App.), 77 S. W. (2d) 127; Allen v. National Life & Accident Ins. Co. (Mo. App.), 67 S. W. (2d) 534; and Wood v. General Ins. Co. of America (Mo. App.), 77 S. W. (2d) 167. Also, several cases are cited from other jurisdictions. Of course, rulings in other jurisdictions will not be considered in certiorari to quash a record of a Court of Appeals, and neither will Courts of Appeals' rulings be considered. [State ex rel. Mann v. Trimble, 290 Mo. 661, 232 S. W. 100; State ex rel. American Packing Co. v. Reynolds, 287 Mo. 697, 230 S. W. 642; and State ex rel. Mechanics' Am. Natl. Bank v. Sturgis, 276 Mo. 559, 208 S. W. 458.] We might say, however, that the cases by the Courts of Appeals referred to by relator, do not involve the effect, on the question here, of denial of liability.

We might say, in passing, that in the Moss and Farmer cases, supra, certiorari was issued by this court, but quashed on hearing. [See State ex rel. Met. Life Ins. Co. v. Hostetter, 338 Mo. 589, 92 S. W. (2d) 122, and 92 S. W. (2d) 126.] But it appears that certiorari in the Moss and Farmer cases was not sought on the question of *effect* on the waiting period of *denial of liability*, and this court, in quashing the writs issued, did not rule such question. Also, we might further say that in Clinton v. Metropolitan Life Ins. Co., 94 S. W. (2d) 1080, and in Sapaw v. Metropolitan Life Ins. Co., 94 S. W. (2d) 1082 (both handed down since submission of the present cause) the St. Louis Court of Appeals held that denial of liability had no effect on the waiting period. While perhaps not pertinent here, we might say that we do not agree with the reason invoked to reach such conclusion. The ruling is based solely on the letter of the contract of insurance and the subject of anticipatory breach (hereinafter considered) and its effect on the waiting period is not considered.

In the Leon case, supra, plaintiffs on September 1, 1917, entered into a contract with certain landowners by which contract they (plaintiffs) were to prospect on the lands. The contract was for one year, and if in that time ore was found in sufficient quantities to make mining profitable, then the landowners were to execute and deliver to the plaintiffs a mining lease for ten years from September 1, 1917, and a copy of the ten-year lease to be given was attached to the prospecting contract. The plaintiffs proceeded to prospect, etc., for a period beyond the one-year term, but the landowners did not, during the period of this operation, invoke forfeiture. November 19, 1919, plaintiffs assigned their prospecting contract to the Waco Mining Company, which company later changed its name to Barnsdall Zinc Company. The zinc company knew all about the precarious right of their assignors to continue on under the prospecting contract, and knew, also, all about the likelihood that ore in paying quantities

would not be found. The zinc company agreed to pay their assignors, Leon et al., $8000 for the assignment, and paid $2000 when the assignment was executed. The remaining $6000 was to be paid in installments of $1000 per month, beginning January 17, 1920, and ending June 17th thereafter. The assignment provided that the zinc company could surrender to the assignors the assignment contract on thirty days' notice, but were to continue the prospecting during the thirty days, and if surrender were made, the prospecting contract was to be reassigned to Leon et al. The zinc company, under the assignment from Leon et al., under date of November 18, 1919, entered upon the land and engaged in drilling and prospecting until the middle of January, 1920, but did not find ore in paying quantities, and abandoned further operations, executed a reassignment to Leon et al., and forwarded same by mail to them, advising by the accompanying letter that it, the zinc company, desired to reassign all its rights, etc. February 18, 1920, the landowners invoked forfeiture of the prospecting contract of September 1, 1917, took possession of the land and so notified Leon et al., and the zinc company. February 23, 1920, Leon et al., filed suit against the zinc company to recover the full amount of the six unpaid monthly installments of $1000 each, the first of which, under the assignment contract, was due January 17, 1920, and recovered in the trial court the full amount of the six installments. This judgment was reversed outright by the Springfield Court of Appeals (Leon et al. v. Barnsdall Zinc Co., 247 S. W. 1013), on the theory of want of consideration, but on the dissent of one of the judges, the cause was certified to the Supreme Court.

This court reversed the judgment of the trial court and remanded the cause with directions to enter a judgment for the plaintiffs for only the installments falling due January and February 17, 1920, ruling, so far as pertinent here (309 Mo. 276, 274 S. W. l. c. 703), that: "Plaintiffs in casting their petition in the form in which they did were endeavoring to state a case within the purview of the doctrine that the renunciation of a contract, covering the entire performance, before the time of performance is such a breach as gives an immediate right of action. That doctrine, however, applies only to contracts which are at least in part mutually executory, where there are interdependent obligations. It cannot be invoked with respect to contracts to pay money at specified times, where one of the parties has completely executed the contract, and it is executory only on the part of the other party."

It is true that plaintiffs in the Leon case sought to recover on all the installments, those not due by the terms of the contract when the suit was filed as well as those then due. And this on the theory of anticipatory breach, which subject is discussed at length in Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, cited (309 Mo.

276, 274 S. W. l. c. 703), in the opinion in the Leon case. [See, also, 3 Williston on Contracts, sec. 1296 et seq., and Restatement of the Law of Contracts, sec. 318, and Mo. Ann. to sec. 318.] But the Leon case did not involve a question of waiving or losing the right to invoke a waiting period by denial of liability before payment, under the contract, was to commence, hence the ruling by respondents is not in conflict with that case.

In Wahl v. Cunningham (en banc), 320 Mo. 57, l. c. 67, 6 S. W. (2d) 576, 67 A. L. R. 489, it was contended by defendants that the suit was prematurely brought. The point was disposed of as follows: "It is urged by defendants that the allegations of the petition disclose that the suit was prematurely brought, and therefore the suit must fail. While it is alleged in both counts of the petition that the promises and agreements of the defendants were to the effect that the defendants would hold plaintiff harmless against loss and would repay to plaintiff the moneys borrowed by him, or on his credit, and advanced by him for the use and benefit of the Pemiscot County Bank, or whatever part thereof was not paid by the bank, whenever the affairs of the bank were finally wound up, settled and liquidated, and it could be determined how much, if any, of the moneys advanced by plaintiff had not been repaid by the bank, and that the bank was in process of liquidation at the time of the commencement of the suit, yet it is further alleged that the defendants, in March, 1923, prior to the commencement of the suit, repudiated the alleged promises and agreements, and advised plaintiff that they were not liable thereon and 'would not pay said obligation at this time, nor when the Pemiscot County Bank's affairs were finally wound up and the total amount ascertained to be due plaintiff.' As a general rule, an action on a contract cannot be maintained until the time for performance of the contract has expired; but the rule is otherwise where, before the time for performance, one of the parties renounces or repudiates the contract. [1 C. J. 1146.] The rule is thus clearly stated in 13 Corpus Juris, 651: 'Where a party bound by an executory contract repudiates his obligation before the time for performance, the promisee has, according to the great weight of authority, an option to treat the contract as ended so far as further performance is concerned, and to maintain an action at once for the damages occasioned by such anticipatory breach.' While it appears from the allegations of the petition herein that the time for performance of the alleged agreements had not arrived when the suit was commenced, yet it is also alleged that the defendants had repudiated such agreements and advised plaintiff that they would not pay or fulfill the obligations imposed upon them thereby. Plaintiff, under such circumstances, was not obliged to await the time fixed for the performance of the agreements, but had the right to treat the agreements as broken and to bring the present action at once for recovery of his damages. Hence,

it cannot be well said that plaintiff's suit or action was prematurely brought.''

There were no installment payments involved in the Wahl case, but the question of premature filing was, and the ruling clearly is that by repudiating the contract the defendants were deprived of the defense that the contract by its terms was not ripe for action. Or, to put it the other way, Wahl, after the repudiation, ''was not obliged to await the time fixed for the performance of the agreements, but had the right to treat the agreements as broken'' and bring action at once for his damages.

Phillips v. Protection Ins. Co., 14 Mo. 220, was on a fire insurance policy. The insurer refused to pay the claim and denounced it as fraudulent. This repudiation occurred at the office of the insurer's agent to which office plaintiff had gone by request to be examined as to the loss. October 29, 1849, plaintiff completed proofs of loss and delivered these October 30th. November 3rd he filed suit. Under the policy the insurance company had sixty days to make payment after proofs were filed and invoked this, among others, as a defense, which defenses the trial court sustained, and plaintiff took an involuntary nonsuit, with leave. The trial court refused to set aside the nonsuit and plaintiff appealed. It was held, in effect, that because of the denial of liability, the insurance company could not invoke the· defense of a premature filing of the suit, and the judgment refusing to set aside the nonsuit was reversed and the cause remanded for trial. The Phillips case is old, but sound, and an example of ''practical convenience.'' [See 3 Williston on Contracts, sec. 1321.] The Phillips case has not been criticized, but has been cited a number of times as late as July 3, 1933. [See Weiss v. Continental Ins. Co. (Mo. App.), 61 S. W. (2d) 392, 1. c. 394.] Cited, however, on the point that a provision requiring an insured to submit to examination under oath and produce books, etc., is reasonable. In the Weiss case the St. Louis Court of Appeals used this language: ''Under the very terms of the policy the loss was not payable until sixty days after due notice, ascertainment, estimate and satisfactory proof of loss had been received by defendant. But separate and apart from the question of the investigation was the proof of acts and conduct which tended to establish a fixed purpose to deny liability; and a denial of liability is a waiver of the right to insist upon an examination of the insured or an inspection of his papers (26 C. J. 411), just as it is a waiver of other and similar conditions in the policy.'' Certiorari was granted in the Weiss case (State ex rel. Continental Ins. Co. v. Becker et al., 336 Mo. 59, 77 S. W. (2d) 100) and this court (Division Two) set out in its opinion (77 S. W. (2d) 1. c. 102, 103) portions of the opinion of the Court of·Appeals, including the above excerpt. The record and opinion of the Court of Appeals was quashed, not because the Court of Appeals was ·in conflict on what was said about the effect

of denying liability, but in holding that plaintiff's instruction was not subject to the objection "that the facts hypothesized in the instruction were not sufficient to constitute a waiver."

Respondents, in the case at bar, held that relator, by denying all liability under the policy, waived or deprived itself of the right to invoke the defense that the six months' waiting period had not expired when the suit was filed, and this ruling is not in conflict with the ruling by this court in Leon v. Barnsdall Zinc Co., as we ruled, supra, nor any other case by this court that we find and we have made extensive search.

Although we have ruled relator's second contention, we analyze Young v. Penn. Fire Ins. Co., 269 Mo. 1, 187 S. W. 856, cited by relator. The question of being *deprived* of the right to invoke the waiting period was not involved in Young v. Penn. Fire Ins. Co. In that case defendant had waived proofs of loss, not by *denying liability*, but by entering upon an appraisement of the loss with appraisers selected, one by the insurer and one by insured, and a third by these two. Liability was admitted, but the extent of the loss was controverted. The fire occurred May 25, 1911, and appraisement was completed July 25th thereafter. Insured filed proofs of loss September 23rd, and filed suit October 2, 1911. The company, under the policy, had sixty days in which to pay, after the filing of proofs of loss, and since the suit was filed in less than sixty days after the filing of proofs of loss, the company contended that the filing of the suit was premature. The suit was not filed until after the expiration of sixty days from the time proofs were *waived*, hence the filing of the suit was not premature. The court said: "Now, taking a step further, this record shows this waiver of proofs of loss to have been more than sixty days prior to the filing of this suit. The waiver took the place of the actual proofs of loss. The suit could not be prematurely brought, if not brought until after sixty days from this waiver of proof of loss." The excerpt we quote is the part of the opinion in Young v. Penn. Fire Ins. Co., that relator here contends is in conflict with the opinion by respondents. Clearly, there is no merit to this contention. The court, in using the language quoted, supra, from Young v. Penn. Fire Ins. Co., was merely showing that there was no foundation for the contention that the suit was prematurely filed, irrespective of the question of whether the point was properly raised. We find no conflict between the ruling in the opinion by respondents and the ruling in Young v. Penn. Fire Ins. Co., supra.

The third contention of relator, as stated, is that the opinion of respondents, in holding that the trial court had jurisdiction, conflicts with prior controlling decisions of this court. The opinion of respondents says (84 S. W. (2d) l. c. 1071) that "it is contended (by relator here) that the circuit court had no jurisdiction because at the date of the trial, but one installment was due in any event,

1168

amounting to $44.92, which under the provisions of Section 1938, Revised Statutes 1929 (Mo. Stat. Ann., sec. 1938, p. 2605), was below the jurisdiction of that court.'' Then the opinion goes on to say that ''defendant had denied all liability under the policy as to plaintiff by letter dated November 7, 1932,'' etc., and held that ''the effective date upon which defendant would become liable to pay on the policy would be from the date of the repudiation of the contract, or November 7, 1932.''

In ruling, supra, the second contention of relator, we, in effect, disposed of the third contention. Respondents held, and we think correctly, that relator by denying liability, ''became liable to pay on the policy'' from the time of denial of all liability. On this basis, one installment became due November 7, 1932, one December 7th and one January 7th. The suit was filed January 11, 1933. Therefore, three installments, amounting to $134.76, were due when the suit was filed and such was the holding of respondents, and the amount due was within the jurisdiction of the circuit court.

Suggestion is made by way of argument that if plaintiff in the cause before respondents could recover the installments falling due from the date of denial of all liability to the time of filing suit, then why should not all the installments be recoverable in the same suit? The answer is that relator, by denying all liability, did not deprive itself of the *terms* of the contract to pay the installments monthly, but only deprived itself of the right to invoke the six months' waiting period. The contract of insurance involved in the cause before respondents was entire, but performance on the part of relator was several (6 Ruling Case Law, section 389, page 1033), and such was the situation in the Leon case. In Wahl v. Cunningham, supra, performance was entire and Wahl recovered in one suit judgment for his entire damages. [Wahl v. Cunningham, 332 Mo. 21, 56 S. W. (2d) 1052.]

A good deal is said in the books about anticipatory breach (13 C. J., secs. 725, 726, pp. 651, 653; Corpus Juris Anno. (Contracts) 1936 to sections 725 and 726; 6 R. C. L., sec. 384 et seq., pp. 1023 et seq.; 3 Williston, Restatement of the Law of Contracts; Roehm v. Horst, supra; and New York Life Ins. Co. v. Viglas (March 30, 1936), 56 Sup. Ct. 615, and numerous others), but we are dealing here with a question of conflict, and these authorities would be pertinent only were we ruling the questions ruled by respondents.

It is our conclusion that the writ improvidently issued and should be quashed. It is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.