## MRI NORTHWEST RENTAL INVESTMENTS, I, INC., Plaintiff–Appellant/Cross–Respondent,

v.

## SCHNUCKS–TWENTY–FIVE, INC., and Allied Supermarkets, Inc., Defendants–Respondents/Cross–Appellants.

### No. 54239.

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 10, 1989.

---

Martin P. Zucker, Robert O. Hetlage, St. Louis, for plaintiff-appellant/cross-respondent.

William J. Travis, St. Louis, for defendants-respondents/cross-appellants.

STEPHAN, Judge.

MRI Northwest Rental Investments, I, Inc. ("MRI"), the sole general partner of Northwest Plaza Associates, Ltd., the owner of Northwest Plaza, a shopping center in St. Louis County, entered into a commercial lease with Allied Supermarkets, Inc. ("Allied") which Allied later assigned to Schnucks–Twenty–Five, Inc. ("Schnucks"). MRI sued both Allied and Schnucks in a two count petition seeking declaratory relief and damages for breach of contract. MRI appeals from the judgment of the trial court entered in favor of respondents Allied and Schnucks. Allied and Schnucks have cross-appealed on the issue of attorneys' fees. In the interest of judicial economy, the two appeals have been consolidated. We reverse and remand in part and affirm in part the judgment of the trial court.

The lawsuit filed by MRI against respondents involved the interpretation of a special termination provision of a commercial lease for premises located at Northwest Plaza Shopping Center in St. Louis County where Schnucks maintained a grocery supermarket. The lease was originally entered into between Allied and MRI's predecessor in interest in 1965. Allied assigned its lease to Schnucks in 1970. The lease was amended in 1978.

The lease as amended in 1978 provided in part:

Section 6.02. Operation of Business.

Except as provided in Section 27.03 hereof, Tenant shall continuously operate all of the leased premises during the entire term of this lease with due diligence and efficiency so as to produce all of the gross sales which may be produced by such manner of operation, unless prevented from doing so by causes beyond Tenant's control. . . .

Section 27.03 of the lease, captioned "Use of Premises" and also amended in 1978, is the sole provision of the lease allowing early termination before February 28, 1990. In pertinent part, Section 27.03 states as follows:

Tenant shall continuously conduct and operate a grocery supermarket upon the leased premises, together with such other of the aforesaid types of business as tenant shall, at its option, desire to operate, except for temporary interruptions due to fire or other casualty, strikes or any other causes beyond Tenant's control.

. . . Tenant shall have the right to cease operation of its business on the Demised Premises and terminate this lease upon Tenant giving Owner one (1) year prior written notice of its intent to cease operation of its business and terminate this lease.

In 1983 MRI became owner of Northwest Plaza Shopping Center and landlord under the lease. In 1984 Schnucks exercised its option to renew the lease for five years effective March 1, 1985, and continuing to February 28, 1990, subject to its right to terminate. On March 12, 1985, Schnucks wrote a letter to MRI stating: " . . . this letter will serve as notice of our intent to cease operations and to terminate the aforesaid Lease. Accordingly, the lease shall terminate as of March 15, 1986." On March 24, 1985, however, Schnucks ceased it business operations on the premises. It closed its store and vacated the premises. MRI, both before and after Schnucks ceased its operations, informed Schnucks

that MRI considered Schnucks' attempted notice to terminate the lease ineffective. MRI claimed the notice given was defective because Schnucks ceased its business operations just eleven days after giving notice, instead of the one year period required under section 27.03 of the lease.

After giving notice, Schnucks continued to pay rent for the one year period until March 15, 1986. MRI accepted the rent payments. In the interval between Schnucks' giving one year's notice and trial on November 30, 1986, MRI had not procured a tenant to replace Schnucks.

The only issue raised by MRI in its appeal is whether the trial court erred in ruling that Schnucks properly terminated its lease. The sole provision of the lease allowing early termination expressly required Schnucks to give one year prior written notice of its intent to cease business operations *and* terminate the lease. (Emphasis ours). Thus, to effectuate a valid termination required two elements: 1) one year notice to cease operations and 2) one year notice to terminate the lease. The uncontroverted evidence establishes that, while Schnucks did give one year's notice of its intent to terminate the lease, it failed to give one year's notice of its intent to cease operations before so doing. The trial court erred in finding the language in Section 27.03 to be unclear and ambiguous.

A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable men may fairly and honestly differ in their construction of the terms. *Union Center Redevelopment Corp. v. Leslie,* 733 S.W.2d 6, 9[3] (Mo.App. 1987). An ambiguity does not arise merely because the parties disagree how the contract should be construed. *Id.* The requirement that Schnucks continue its business operations during the one year notice period is contained within the same single sentence granting Schnucks the right of early termination of its leasehold interest. The requirements are joined by "and", not "or". We are persuaded by MRI's argument that the word "and" connecting Schnucks' one year prior written notice of its intent to cease operations and terminate

this lease clearly requires notice of both to effectuate a valid termination of the leasehold relationship. *Accord, State ex rel. Dunlap v. Hanna,* 561 S.W.2d 411, 413 (Mo.App.1977) (statute's use of "and" held to require not just one, but two tasks to be performed). Defendants do not contend here that the letter of termination contained both one year notices required by the lease as a condition for early termination. The only one year notice in the letter referred to termination but was silent as to any time frame for ceasing business. The letter was not valid termination of the lease. We therefore need not reach the issue of whether failure to continue the business for a year after the notice invalidated the notice. *See Leon v. Barnsdall Zinc Co.,* 309 Mo. 276, 274 S.W. 699 (1925).

Allied and Schnucks have raised an additional point in their respondents' brief in support of the trial court's judgment. They contend that MRI failed to prove any damages in that MRI undertook to relet the premises as Schnucks' agent, but MRI failed to make reasonable efforts to replace Schnucks with another tenant. They also argue that MRI failed to allege or prove it sustained any damages caused by Schnucks' failure to conduct continuous operation of its business on the leased premises. As to this latter contention, MRI's damages are based upon the rent due under the still extant lease, not its damages resulting from early closing.

The trial court made extensive findings of fact related to the issue of MRI's mitigation of its damages. These findings included that MRI had written Schnucks on July 9, 1985, reasserting MRI's position that the lease continued in force and effect and that, although MRI would consider replacement tenants, MRI had no present arrangements with any tenant to occupy the space. MRI reiterated its position by letter of March 24, 1986, stating as follows: "The landlord has attempted to relet the premises since the original default by Schnucks–Twenty–Five, Inc., by closing the store in violation of the tenant's operating covenant, and will continue to do so for the benefit of the Center and to minimize the future rent obligations of Schnucks."

The trial court also found MRI had not listed the premises or lease with any real estate broker, had not placed any signs on the premises or at the Center to indicate the premises were available for leasing and had not placed any advertisements for the purposes of locating any new tenant.

When approached by some brokers interested in presenting tenants for the space, MRI informed them that no commission was to be paid. On November 6, 1985, Greyhound Bus Company contacted MRI as a prospective tenant. On January 2, 1986, the YWCA also contacted MRI. MRI rejected both prospective tenants because of their "non-compatibility to a shopping center." Noting that Schnucks' lease required rent at $4.09 per square foot, the trial court also observed that, after Schnucks vacated the premises, MRI offered to rent to Best Buy at the rate of $7.75 per square foot and to CMC Stereo at $8.00 plus $4.00 for extras per square foot. The trial court concluded its fact-finding stating that MRI failed to contact any prospective tenants on its own initiative until June 1986 when the head of MRI's leasing department contacted T.J. Maxx Co., Marshalls, Service Merchandise, and Toys R Us.

Although the trial court made extensive findings of fact related to the issue of damages, its ultimate determination that MRI was not entitled to recovery for rent forestalled any findings or conclusions of law regarding MRI's mitigation of damages. Its only conclusion on damages was that MRI did not claim or prove "any damages as a result of Schnucks' failure to maintain continuous operations after March 23, 1986." Our reversal of the trial court's judgment requires that the issue of damages be remanded to the trial court. On remand the trial court can make the additional findings as necessary in determining the propriety and amount of any damages.

MRI is entitled to damages measured by the rent due under the lease. The trial court may also consider defendants' contention that MRI failed to mitigate damages.

Allied and Schnucks, in their cross-appeal, present the single issue whether they were entitled to an award of attorney's fees as an element of costs under section 527.100, RSMo 1986, in defending against the declaratory judgment action by MRI. They presented the issue to the trial court in their post-trial motion to amend the judgment. The trial court expressly denied their request.

Awards of attorney's fees are left to the broad discretion of the trial court and will not be overruled except for an abuse of discretion. *Union Center Redevelopment Corp. v. Leslie,* 733 S.W.2d 6, 9 (Mo.App. 1987).

Schnucks argues MRI should be required to pay their costs and attorney's fees as was the landlord in *Union Center Redevelopment Corp. v. Leslie.* Their argument presumes our affirmance of the trial court's judgment in their favor. Their assumption, however, is without basis since we have determined MRI should have prevailed below. Furthermore, Schnucks' admitted breach of contract, notwithstanding the continuous operation clause of the lease, supports the trial court's decision to deny them any recovery for their costs and attorney's fees. Respondents' sole point in their cross-appeal is without merit.

The judgment of the trial court in favor of Schnucks and Allied is reversed and remanded with directions that the trial court enter judgment in favor of MRI and that it award MRI such damages as it is entitled to. The cross-appeal by Allied and Schnucks is without merit; the judgment as it pertains to the award of attorney's fees is affirmed.

SMITH, P.J., and SATZ, J., concur.